IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ARKANSAS

FAYETTEVILLE DIVISION

Joan DOE
Plaintiff,                                    )
                                              )
v.                                            )          Civil  Action No. <u>21-5231</u>
                                              )
                                              )
UNIVERSITY OF ARKANSAS,                       )
Fayetteville, et. al.


PLAINTIFF'S BRIEF ON MOTION FOR PRELIMINARY INJUNCTION, RESUBMITTED IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN EX PARTE PRELIMINARY INJUNCTION


I. TABLE OF CONTENTS

I.      Table of Contents ..................................................................................... 1

II.     Summary of Motion and the Legal Authority to Issue ............................ 1-2

III.    Table of Authorities ................................................................................. 2-3

IV.     Statement of the Facts .............................................................................. 3-6

V.      Statement of the Issues ............................................................................ 6-10

VI.     Argument .................................................................................................. 10-14

VII.    Conclusion ................................................................................................ 14

II. SUMMARY OF THE MOTION AND THE LEGAL AUTHORITY TO ISSUE

1.      Plaintiff seeks a preliminary injunction barring enforcement of Defendant's conduct sanctions because they violate the ADA's (American's with Disabilities Act) prohibition against the screening and exclusion of individuals with disabilities, and because they are an unconstitutional violation of due process.

2.      The Court may issue a preliminary injunction when the movant demonstrates: (1) the probability the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) that the balance of the threat of irreparable harm to the movant and the threat of injury granting the injunction will inflict on Defendant tips in favor of the movant; and, (4) that the public interest is served.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  Plaintiff satisfies each factor.

3.      The Court has authority to issue the preliminary injunction under *Ark. and Fed. R. of Civ. P.* 65(a), 28 U.S.C. § 1657, and 5 U.S.C. § 705.  Under *Ark. and Fed. R. of Civ. P.* 65(a) the Court may issue a preliminary injunction on only notice to the nonmoving party, that is, without conducting a hearing.  Under 28 U.S.C. § 1657, the Court may determine the order in which civil actions are heard and determined except that the court shall expedite any action for preliminary injunctive relief or any other action if good cause is shown.  Good cause is shown if a right under the U.S. Constitution or a federal statute is maintained in a fact based context that shows the request for expedited consideration is valid.  Under 5 U.S.C. § 705, the Court may "issue all necessary and appropriate process" to preserve a party's status or rights pending determination of the merits.


### III. TABLE OF AUTHORITIES

**Statutes**                                                                                          **Page**

*Ark. R. of Civ. P. 65(a)* ........................................................................ 2

*Fed. R. of Civ. P. 65(a)* ........................................................................ 2

*28 U.S.C. § 1657* .................................................................................. 2

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) ...................... 2, 10

*Planned Parenthood v. Rounds,* 530 F.3d 724 (8th Cir. 2008) ...................................... 10

*Able v. United States*, 44 F.3d at 131-32 (2nd Cir. 1995) .................................... 11

*Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2nd Cir. 1989) .......................... 11

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ............................................... 12

*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs.*,
826 F.3d 1030 1040 (8th Cir. 2006) . .................................................................. 11

*Americans with Disabilities Act, Title II, §§ 12132 et. seq.* ............................................... 1, 6, 7,
11, 12

## IV. STATEMENT OF THE FACTS

1.      Plaintiff is a third year law student at the University of Arkansas School of Law. Plaintiff's grade point average is 2.85.  Plaintiff needs only fourteen credit hours to qualify for graduation.

2.      In the fall 2021 semester Plaintiff made written reports to law school faculty of pervasive harassment and intrusion she experienced both on and off Defendant's grounds. *Ex. 3, pp. 31-33, 47-48.*

3.      On Sept. 6, 2021, Plaintiff was encouraged via phone call to attend a meeting at Defendant's law school in which help would be provided to her.  When Plaintiff arrived for

the meeting, she learned the meeting would be with Defendant's officials who possess mental health provider certification.  Plaintiff declined to participate.

4.      On Sept. 7, Plaintiff received an email notifying her that Defendant had concerns about its ability to certify her character and fitness to practice law.  *Ex. 3, pp. 34-35.*

5.       The email stated the causes of concern were conversations with professors, inability to prepare for class, and affected academic performance without any specifics articulated.  *Id.*.   The email required Plaintiff's attendance at a meeting scheduled the next day in direct conflict with one of Plaintiff's classes, and it issued a prohibition on Plaintiff's communication with any faculty members other than Dean Susannah Pollvogt about "being monitored and related activity."  *Id.*.

6.      On Sept. 8, Plaintiff was ordered by Defendant via email to contact JLAP "to discuss counseling options."  *Ex. 3, pp. 1-2.*   On Sept. 9, Plaintiff was ordered to "follow the course of action recommended by [JLAP], including but not limited to a series of counseling appointments."  *Ex. 3, pp. 3-4.*

7.      On Sept. 9, Plaintiff advised JLAP did not recommend counseling.  *Ex. 3, p. 4.*

8.      On Sept. 10, Defendant ordered Plaintiff to contact JLAP by "the end of business Monday, 9/13/2021" and "arrange for a psychiatric evaluation."  *Ex. 3, p. 5.*

9.      On Sept. 27, Plaintiff received an email from Defendant directing her to sign JLAP's release of information.  Plaintiff requested additional time, and Plaintiff offered to provide the requested information directly to Defendant.  Defendant insisted Plaintiff provide a release of information to JLAP.  *Ex. 3, p. 22-23.*

4

10.     On Sept. 27, Plaintiff requested a reasonable time extension and for the authority that permits the law school to require a student's submission of personal medical information to JLAP.  *Ex. 3, p. 24.*

11.     On Sept. 27, Plaintiff was notified that her failure to release her medical records to JLAP meant she was not in compliance with the process.  *Ex. 3, p. 25.*  Plaintiff had no knowledge that "the process," or noncompliance therewith, involved the threat of suspension.

12.     Plaintiff asked again for a reasonable time extension and expressed a willingness and desire to comply.  *Ex. 3, p. 27.*  Defendant was unmoved and advised Plaintiff to complete the release that day (Sept. 28).

13.     On Sept. 30, without discussion or prior notice, Plaintiff was placed on interim suspension.  *Ex. 1.*

14.     The interim suspension contained three allegations of misconduct.  *Id.*.  The first involves Plaintiff's refusal to comply with Defendant's order of medical care and order to release medical records to an unsecured recipient.  *Id.*.  The second and third allegations center on allegations pertaining to Plaintiff's dog.  *Id.*.

15.     Defendant's own policy manual does not permit suspension for violations of conduct codes unless there is a determination of a threat to the safety of the university.  *Ex. 4, p. 20.*

16.     Defendant's policy manuals require conduct matters be adjudicated using a preponderance standard of proof, or a finding of intent.  *Ex. 4, p. 12.*

17.     None of the three letters of judicial outcome offer a statement of proof using any evidentiary standard.  *Ex. 1, 2, 5.*

18.     On Nov. 22, Defendant's conduct board of appeal issued the final judicial outcome ordering Plaintiff's suspension until May 2022, pending completion of numerous misconduct sanctions including payment of conduct assessment fees, completion of mental health treatment, and release of records from said treatment to Defendant's hearing officer. *Ex. 5.*

19.     Plaintiff submits two medical recommendation letters for the Court's review.  The letters provide a medical recommendation that Plaintiff be allowed to resume enrollment.  The first letter was verbally offered to Defendant multiple times, contingent upon assurance of appropriate confidentiality protection which was not secured.  The letter was also offered in writing in the final appeal document Plaintiff submitted.  Ex. 8, p. 3.  Additionally, Plaintiff verbally petitioned the appeal board for confidential means to provide the letter to no avail.  The first letter's date is Oct. 27, 2021.  The second letter's date is Jan. 10, 2022.  Unlike the first medical recommendation letter, the second is unsigned due to challenges stemming from Covid.  Plaintiff requested the second letter in advance of filing the present motion and the provider is not in the office to provide signature until Friday.

20.     Plaintiff enrolled in Defendant's law school two days before orientation began, thus Defendant is aptly experienced in late-stage enrollment changes and no weight should be given to any objection due to timing should the court issue the injunction.

## V. STATEMENT OF THE ISSUES

21.     Defendant suspended Plaintiff without notice after nearly a month of exchanges in which Defendant attempted to mandate Plaintiff undergo mental health treatment and release

records of said treatment to a third party, JLAP. Thus, Defendant's conduct is a prima facie violation of Plaintiff's rights under the ADA.

22.     Plaintiff now faces catastrophic financial and reputational consequences due to the collateral effects of Defendant's actions. Not only is Plaintiff required to return the thousands of dollars in financial aid granted in the fall 2021 semester, Defendant's action if not enjoined may impede Plaintiff's ability to access the financial aid necessary to complete the program at any point in the future. Plaintiff's academic transcript reflects permanent withdrawal from fall 2021 courses. The reputational harms to an aspiring attorney from Defendant's actions need not be articulated to this Court since it is best positioned for awareness of the importance of the appearance of impropriety among other advocates of the law and the general public.


### Review of Misconduct Allegations

23.     Defendant charged Plaintiff with violation of three codes of conduct. Plaintiff takes each and discusses them in turn below for the purpose of enabling the Court's decision on the requested motion.


**Misconduct Charge 1, Code F38: Failing to comply with orders or directives of University officials, University hearing bodies, University Police or any other law enforcement officers acting in the performance of their duties.**

24.     Though not articulated in any of Defendant's judicial outcome communication documents, Plaintiff understands this allegation rests upon Plaintiff's refusal to submit to the mental health treatment and release of medical records to JLAP as Defendant ordered. Thus, as the conduct code reads, Plaintiff admits violation. However, Defendant's orders

and directives constitute a prima facie case of violation of Title II of the ADA (*see Plaintiff's motion for prelim. injunction*).

25.      Plaintiff repeatedly sought means to comply with Defendant's orders that did not violate the fundamental right to privacy and expose Plaintiff to ongoing risk of privacy breach in perpetuity due to Defendant's absent medical privacy standards.

**Misconduct Charge 2, Code F31: Harboring or bringing a pet on University premises in violation of University policy.**

26.      Plaintiff admits bringing Plaintiff's dog onto university premises but denies doing so in violation of university policy.  The conduct code is not a strict liability statute, thus intent must be established before culpability may be assigned.  *Ex. 4, p. 12*.  Defendant's judicial outcome documentation fails to establish any evidentiary basis or offer any finding of fact to support its conclusion that Plaintiff is culpable.  This is a plain violation of due process.

27.      Moreover, Defendant's own policies do not permit temporary or permanent suspension for violation of this conduct code, adding to the violation of due process.  *Ex. 4, p. 20*, (*interim administrative actions, like interim suspension, are used in order to protect the safety and welfare of members of the university community*).

28.      Plaintiff ceased bringing Plaintiff's dog onto Defendant's premises once it was clear that doing so was impermissible.  Prior, Plaintiff obtained email communication indicating one professor had no problem with Plaintiff's dog's presence in class.  *Ex. 3, p. 18-19*.  On another occasion Plaintiff's dog was present without awareness by anyone. Plaintiff concedes the presence of a dog in law school is less than ideal, as is the severe and

pervasive harassment Plaintiff experienced which served as the basis for the need to have the dog on Defendant's premises.

29.      Though this misconduct charge is not dispositive to the present motion, Plaintiff shares the details to avoid any appearance of cherry-picking facts in a light favorable to the present motion before the Court.

**Misconduct Charge 3,  Code F11. Disorderly conduct including, but not limited to the following: engages in fighting or in violent, threatening behavior, makes unreasonable or excessive noise, uses abusive or obscene language or makes obscene gestures, disturbs or disrupts any assembly, classroom or meeting of persons, obstructs vehicular or pedestrian traffic, or creates a hazardous or physically offensive condition.**

30.      Again here, though not articulated in any of Defendant's judicial outcome documents, Plaintiff understands this charge rests solely on a hearsay report of dog feces found in the law school building.

31.      Defendant's student conduct manual states the preponderance standard of evidence is used to adjudicate misconduct charges. *Ex. 4, p. 12.*  Under this standard Defendant must find with a 50.01% or more degree of certainty, that Appellant's dog left feces in the law school building on the two dates in question.  Defendant bears the burden of proof.

32.      Defendant offers no proof to support its finding that it was Plaintiff's dog that left feces in the law school building.  More to the point, Defendant offers no proof that dog feces was ever actually present in the building.  Hearsay is inadmissible and no exceptions in the Fed. R. of Ev. suffice these facts.

33.      Plaintiff understands alleged violation of F11 relates to reports of dog feces found in the law school on Sept. 25 and Sept. 28.

34.     On Sept. 25, Plaintiff recalls walking the dog on University grounds before departing campus around 8:30am for the remainder of the day.

35.     On Sept. 27 - 28, Appellant's dog resided at the Hyatt Place hotel in Fayetteville, AR.  *See Ex. 3, p. 45.*

36.     Though this misconduct charge is not dispositive to the present motion, Plaintiff shares the details to avoid any appearance of cherry-picking facts in a light favorable to the present motion before the Court.


## VI. ARGUMENT

37.     A preliminary injunction is appropriate when  the movant demonstrates: (1) the likelihood the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance of the threat of irreparable harm to the movant and the threat of injury granting the injunction will inflict on Defendant tips in favor of the movant; and, (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).

38.     In *Planned Parenthood v. Rounds*, the Eight Circuit undertook an extensive analysis of the Dataphase factors for the purpose of distinguishing whether  "a substantial likelihood of success" is substantively different than a "substantial probability of success" and if so, when one or the other applies.  *See Planned Parenthood v. Rounds,* 530 F.3d 724 (8th Cir. 2008).   To avoid confusion on this matter, Plaintiff takes up this issue here.

39.     The Eighth Circuit requires a a more rigorous standard for a preliminary injunction of the implementation of statutes than just a "fair chance" to succeed on the merits.  *Id.*.  When a movant seeks to preliminarily enjoin the implementation of a state

statute, the test requires showing a likelihood of success on the merits.  *Id.*.  When a movant

seeks to preliminarily enjoin administrative actions by state or local government agencies,

the Court should examine the circumstances surrounding the government action to

determine to what extent the challenged action represents "the full play of the democratic

process" and thus deserves the deference of the traditional test.  *Rounds,* 530 F.3d 724  (8th

Cir. 2008), citing *Able v. United States*, 44 F.3d at 131-32 (2nd Cir. 1995) (per curiam)

(quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2nd Cir. 1989).

40.     Plaintiff argues that under either the fair-chance or likelihood standards, the facts

support issuing the preliminary injunction.


### Likelihood of Success on the Merits

41.     Plaintiff is likely to succeed on the merits because Defendant's actions constitute

a prima facie case of violation of Title II of the ADA.  Defendant regarded Plaintiff as

having a disability.  Defendant ordered Plaintiff undergo involuntary mental health

treatment and release records of said treatment to a third-party, JLAP.  When Plaintiff did

not comply, Defendant charged misconduct violations that resulted in suspension.

42.     When reviewing the likely-to-prevail element, Courts evaluate whether the full

play of the democratic process was involved in the actions of government agencies.

*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs.*, 826 F.3d 1030, 1040 (8th

Cir. 2006) quoting *Rounds*, 530 F.3d at 732 n.6).  Here, can Defendant's action justly be

regarded as legitimate government action?

43.     Even were Defendant to articulate a direct threat to which it rightfully believed it

was responding, Defendant's conduct fails under the ADA.  Government agencies may not

11

rely upon faculty policy manuals, or any other document, as a basis for violating the federal rights guaranteed by the ADA.

### Threat of Irreparable Harm

44.     The harm suffered by individuals excluded from government service because of disability, real or perceived is profound and well understood.  Prevention of this harm is precisely what Congress had in mind when it enacted the ADA and its subsequent amendments

45.     This Court understands far better than Plaintiff can what is required to maintain the public's trust in one's practice of the profession of the law.

46.     The practical irreparable harm of time lost, earning potential denied, and catastrophic financial implications are not illusive and need no elaboration.  Plaintiff cannot get back the fall semester of 2021.  Nothing erases the humiliation of being escorted into and out of the law school building by an armed, uniformed police officer in the presence of Plaintiff's law school colleagues for the purpose of retrieving Plaintiff's text books upon order of suspension.  And nothing erases the shame of informing Plaintiff's family that no longer is being a law school student an available status.  Issuing the preliminary injunction can, however, begin to restore Plaintiff's rightful status.

### Balance of Equities

47.     "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

48.     Defendant may argue that a preliminary injunction sends a message that undercuts its disciplinary authority to operate its institution of higher education as it sees fit.  Plaintiff understands this concern and does not disagree that Defendant must be afforded proper authority to effectively manage disciplinary matters.  Learning benefits from rule and order and both rule and order are in short supply in the present time.  But Defendant may not manage disciplinary matters in any way and at any time that it may see fit.  And in Plaintiff's case, Defendant plainly violated federal law.  Thus the public consequences of the preliminary injunction weigh in favor of issuing it.  The public needs assurance that government agencies are held to account for their actions.  Moreover, the protective order issued by this Court ought to foreclose creation of any public consequences since the matter is shielded from public view.

49.     Defendant may have a liability concern in being unable to explain or prevent the harassment Plaintiff reported.  This concern is not a basis to suspend a student or label a student with a disability.  Defendant is of ample means to find reasonable, nondiscriminatory means to address any liability concerns it may have.

50.     Defendant certainly has a valid concern in the mental health of its students.  At no time has the public been more painfully aware of the cost of unmet mental health needs and these needs are rampant among law school students.  Here again, Defendant's conduct fails to pass a reasonability test.  A valid concern for the well-being of a student is not a justification for conditioning access to education on the basis of involuntary mental health treatment.  Were the Court to issue the requested injunction, Defendant faces no material risk of harm because Plaintiff's enrollment requires no unique practices for Defendant.

51.     Plaintiff's interest in the injunction is cessation of the violation of federal rights, avoidance of additional irreparable financial harm, and restoration of access to education.


**Public Interest**

52.     It is always in the public interest to uphold the nation's laws and preserve a party's federal rights.  Simply put, the public interest factor favors Plaintiff.


## VI. CONCLUSION

53.     A preliminary injunction is a form of extraordinary relief issued at the sole discretion of the Court, not a right to which one is entitled.  The preliminary injunction is an action meant to be used for precisely the circumstances Plaintiff presents, that is, to impede violation of federal rights, preserve Constitutional status, and prevent further injustice. Plaintiff asks the Court to issue the preliminary injunction as requested in the accompanying motion.


Respectfully submitted this 14th day of January, 2022.



J. Doe, Plaintiff pro se


Post Office Box 254
Devon, Pennsylvania 19333

14

(479) 372-2892
Sunshinecharlie13@yahoo.com